UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CIVIL DIVISION

MGR, Inc., d/b/a Air Plus Limited, a Minnesota corporation,

Plaintiff,

vs.

Tri-ad International Freight Forwarding, Limited, a Canadian corporation,

Defendant.

Court File No. 01-CV-803 JEL/JGL

**AFFIDAVIT OF AVNISH AGGARWAL**

STATE OF MINNESOTA )
) ss.
COUNTY OF RAMSEY )

Avnish Aggarwal, being first duly sworn upon oath, deposes and says as follows:

1. I am the controller for Defendant, Tri-ad International Freight Forwarding, Ltd. ("Tri-ad"). I make this Affidavit based upon my own personal knowledge and on behalf of Tri-ad. I am responsible for all accounting functions at Tri-ad, including but not limited to, financial dealings and bank activities. I oversee and manage accounts payable, accounts receivable and customer invoices. I also issue payments on behalf of Tri-ad when such payments are due.

2. On December 24, 2002, Tri-ad and MGR, Inc., d/b/a Air Plus Ltd. ("Air Plus") entered into a Settlement Agreement and Mutual Release in order to resolve all claims that either party may have against each other. A copy of the Agreement is attached hereto as Exhibit A. Pursuant to the terms of the Agreement, Tri-ad agreed to pay Air Plus $280,000.00 in 13 installments. The first installment ($30,000) was due "on or before" 10 days from the execution of the Agreement by January 3, 2003. The second installment ($20,833.33) was due "on or

before" 40 days from the execution of the Agreement, February 2, 2003. The remaining 11 payments in the amount of $20,833.33 each were due "within thirty (30) day intervals thereafter." The dictionary defines the word interval to mean a gap. Based on this definition of interval, I computed the due date on the remaining 11 payments to be on the 31st day after the 30-day gap had elapsed. A copy of the relevant pages from New Webster's Dictionary (Vest Pocket Edition) and Roget's Desk Thesaurus are attached hereto as Exhibit B.

3. I personally wired the payments to Air Plus within the time frame required by the Agreement. Not only was each installment made within the time frame but all 13 installments were made in advance of their due dates. A chart showing the due dates and dates of payment is attached hereto as Exhibit C.

4. As of the date of this Affidavit, Tri-ad does not owe Air Plus any monies as it has completely discharged its obligations to Air Plus and has done so in a timely manner.

Further Affiant Sayeth Not.

DATED: June 8, 2004

s/ Avnish Aggarwal
Avnish Aggarwal

Signed and Sworn to Before Me
this 8th day of June 2004.

s/ John Eversley
NOTARY PUBLIC

# EXHIBIT A

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered into this 24th day of December, 2002, by and between M.G.R., Inc. d/b/a Air Plus Limited (herein referred to as "Air Plus") and Tri-ad International Freight Forwarding, Ltd. (herein referred to as "Tri-ad").

## WITNESSETH:

WHEREAS, Air Plus and Tri-ad had entered into a "Transborder Canada Agency and Sales Agreement" effective October 1, 2000 (the "Sales Agreement") and a "Pickup Agreement" dated February 1, 2001 (the "Pickup Agreement"); and

WHEREAS, Air Plus and Tri-ad are parties to a lawsuit entitled M.G.R., Inc. d/b/a Air Plus Limited vs. Tri-ad International Freight Forwarding, Ltd., venued in the State of Minnesota, U.S. District Court as Court File No. 01-CV-803 (JEL/JGL) (hereinafter the "Litigation"); and

WHEREAS, the parties wish fully and finally to settle and terminate all differences, disputes and disagreements between them;

NOW, THEREFORE, in consideration of the foregoing and of the mutual promises and undertakings set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1. In settlement of all claims, Tri-ad will pay Air Plus the total sum of Two Hundred Eighty Thousand and No/100 U.S. Dollars ($280,000.00 U.S.) as follows:

   (a) An initial installment of Thirty Thousand and no/100 U.S. Dollars ($30,000.00 U.S.) by wire transfer or check on or before ten (10) days from the execution of this Agreement; and



THIS IS EXHIBIT A TO THE AFFIDAVIT OF AVNISH AGGARWAL, SWORN BEFORE ME THIS 8TH DAY of JUNE, 2004

(b) Twelve (12) additional installments each in the amount of Twenty Thousand Eight Hundred Thirty-Three and 33/100 U.S. Dollars ($20,833.33 U.S.) with the first installment due on or before forty (40) days from the execution of this Agreement and each subsequent installment payment within thirty (30) day intervals thereafter.

2. Any default by Tri-ad in the payments set forth in Paragraph 1 of this Agreement shall result in the acceleration of all amounts due under this Agreement, plus an additional payment to Air Plus of Thirty Thousand and no/100 U.S. Dollars ($30,000.00 U.S.). The parties further stipulate and agree that Air Plus, at its option, may file a motion with the United States Magistrate Judge assigned to the Litigation to reopen the Litigation and enter judgment against Tri-ad in favor of Air Plus in the amount of Three Hundred Ten Thousand and no/100 U.S. Dollars ($310,000.00 U.S.) less the amount of any payments previously made to Air Plus, together with additional costs and reasonable attorneys' fees incurred in enforcing this Agreement. Written notice of said motion shall be delivered at least ten (10) days prior to hearing to:

Tri-ad International Freight Forwarding, Ltd.
Attention: Linda Collier
1575 South Gateway Road, A&B
Mississauga, Ontario, Canada L4W 551

with a copy to Tri-ad's counsel:

Jeffrey J. Bouslog
Oppenheimer, Wolff & Donnelly, LLP
Plaza VII, Suite 3300
45 South Seventh Street
Minneapolis, MN 55402

Notice of said motion is effective upon actual receipt by Tri-ad. Tri-ad's address set forth above may be changed upon delivery of written notice to Air Plus with a copy to Air Plus' counsel:

Mark J. Ayotte
Briggs and Morgan, P.A.
W-2200 First National Bank Building
332 Minnesota Street
Saint Paul, MN 55101

Said motion for entry of judgment shall be accompanied by an affidavit from Air Plus or its attorneys stating that Tri-ad is in default under this Agreement and the amount then due. Judgment in favor of Air Plus against Tri-ad may not exceed the principal amount of Three Hundred Ten Thousand and no/100 U.S. Dollars ($310,000.00 U.S.).

3. Pursuant to 28 U.S.C. § 636(c), Air Plus and Tri-ad voluntarily consent to have a United States Magistrate Judge conduct any and all further proceedings in the Litigation relating to this Agreement, including resolving a motion to reopen the Litigation and for entry of a final judgment pursuant to this Agreement.

4. In consideration of the payments set forth in paragraph 1 and all of the promises set forth herein, Air Plus, for and on behalf of itself, and its affiliates, directors, officers, employees, agents, predecessors, successors, assigns, heirs, and representatives (hereinafter collectively referred to as "Air Plus Releasors"), does hereby absolutely and unconditionally forever waive, release and discharge Tri-ad, and its directors, officers, employees, agents, predecessors, successors, assigns, heirs, representatives and attorneys (hereinafter collectively referred to as "Tri-ad Parties Released") of and from any and all claims, demands, costs, liabilities, suits, charges, causes of action, and damages of every kind and nature whatsoever, whether in law or in equity, contract or tort, and other complaints of any kind for or because of any matter or thing done or omitted by the Tri-ad Parties Released prior to the date hereof, whether known or unknown, accrued or contingent, arising in tort, contract, under any law or regulation or otherwise, in any amount, including, without limiting the generality of the

foregoing, any and all claims arising out of or relating to the Sales Agreement, the Pickup Agreement, and those claims which were alleged in, that could have been alleged in, or in any way connected with the pleadings, records or papers in the Litigation.

5. In consideration of all of the promises set forth herein, Tri-ad, for and on behalf of itself, and its affiliates, directors, officers, employees, agents, predecessors, successors, assigns, heirs, and representatives (hereinafter collectively referred to as "Tri-ad Releasors"), does hereby absolutely and unconditionally forever waive, release and discharge Air Plus, and its directors, officers, employees, agents, predecessors, successors, assigns, heirs, representatives and attorneys (hereinafter collectively referred to as "Air Plus Parties Released") of and from any and all claims, demands, costs, liabilities, suits, charges, causes of action, and damages of every kind and nature whatsoever, whether in law or in equity, contract or tort, and other complaints of any kind for or because of any matter or thing done or omitted by the Air Plus Parties Released prior to the date hereof, whether known or unknown, accrued or contingent, arising in tort, contract, under any law or regulation or otherwise, in any amount, including, without limiting the generality of the foregoing, any and all claims arising out of or relating to the Sales Agreement, the Pickup Agreement, and those claims that could have been alleged in, or in any way connected with the pleadings, records or papers in the Litigation.

6. Tri-ad further agrees to reimburse, defend, indemnify and hold Air Plus harmless of, from and against any and all loss, cost, demand, liability, claim or cause of action, including court costs and reasonable attorneys' fees of any kind or nature from Tech Data arising out of or incident to the services provided by Air Plus under the Sales Agreement or Pickup Agreement, including specifically claims arising from freight loss or damage.

7. Tri-ad Releasors do hereby promise, covenant and agree with Air Plus Parties Released that if they bring, commence, prosecute or maintain, or cause or permit to be brought, commenced, prosecuted or maintained, any suit or action, either in law or in equity, in any court in the United States, or in any state thereof, or elsewhere, against Air Plus Parties Released in breach of this Agreement, the Tri-ad Releasors shall pay to Air Plus Parties Released all losses, costs or damages caused thereby, together with reasonable attorneys' fees incurred in defending or otherwise responding to said suit or claim.

8. Air Plus Releasors do hereby promise, covenant and agree with Tri-ad Parties Released that if they bring, commence, prosecute or maintain, or cause or permit to be brought, commenced, prosecuted or maintained, any suit or action, either in law or in equity, in any court in the United States, or in any state thereof, or elsewhere, against Tri-ad Parties Released in breach of this Agreement, the Air Plus Releasors shall pay to Tri-ad Parties Released all losses, costs or damages caused thereby, together with reasonable attorneys' fees incurred in defending or otherwise responding to said suit or claim.

9. Air Plus and Tri-ad hereby instruct their attorneys to execute a Stipulation of Dismissal with Prejudice and Order with respect to the Litigation and to file the Stipulation with the Court within ten (10) days from the execution of this Agreement. The dismissal of the Litigation shall not act as a bar to any motion to reopen or for entry of a final judgment pursuant to paragraphs 2 and 3 above.

10. This Agreement shall be binding upon and inure to the benefit of the successors and assigns of Air Plus and Tri-ad whether by way of merger, consolidation, operation of law, assignment, purchase or other acquisition.

11. It is the intent of the parties that the terms on which this matter has been settled, including the terms and conditions of this Agreement, will be treated as confidential. Accordingly, no party or attorney for a party will disclose the terms or amounts of this settlement to anyone, except as required for tax reporting purposes or similar legally required or permitted disclosures, to inform their respective officers and directors who have a legitimate need to know the terms or amounts of the settlement in the course of performing their duties for the parties, in connection with the enforcement of this Agreement or the motion for entry of judgment referenced in paragraph 2 above.

12. In entering into this Agreement, the parties represent that they have relied upon the advice of their attorneys, that each party's attorney is the attorney of the party's own choice, that they have read the terms of this Agreement, that the terms of this Agreement have been completely read and explained to them by their attorney, and that the terms are fully understood and voluntarily accepted by them. Each party agrees and represents that this Agreement is made on its sole judgment, belief, and knowledge as to all phases of its alleged claims. Neither party is relying on any representations or statements made by the other party or anyone representing the other party or by any person employed by the other party.

13. This Agreement constitutes the entire agreement and understanding between the parties pertaining to the resolution of the Litigation and the other matters specified herein and supersedes and replaces all prior negotiations and proposed agreements, written or oral. The parties acknowledge that no other party or agent or attorney of any other party has made any promise, representation or warranty to induce this Agreement and the parties acknowledge that they have not executed this Agreement in reliance upon any such promise, representation or warranty not contained herein.

14. This Agreement shall be construed and interpreted in accordance with the laws of the State of Minnesota.

15. This Agreement may be executed in counterparts with the same force and effect as if a single original had been executed by the parties hereto.

**M.G.R., INC. d/b/a AIR PLUS LIMITED**

Dated: December 13th, 2002

By ______________________
Its President

**VERIFICATION**

I, Jack Duffey, am President of M.G.R., Inc. d/b/a Air Plus Limited, a corporation named in the foregoing document. I have read the foregoing Agreement and know the contents of it. Said document was signed on behalf of Air Plus Limited and by authority of its Board of Directors. I declare under penalty of perjury that the foregoing is true and correct.

______________________
Jack Duffey

Subscribed and sworn to before me this 13th day of December 2002

______________________
Notary Public

ROBERT CARL CARLSON
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2005

**TRI-AD INTERNATIONAL FREIGHT FORWARDING, LTD.**

Dated: December 24, 2002

By [signature]
Its President

**VERIFICATION**

I, Linda Collier, am President and CEO of Tri-ad International Freight Forwarding, Ltd., a corporation named in the foregoing document. I have read the foregoing Agreement and know the contents of it. Said document was signed on behalf of Air Plus Limited and by authority of its Board of Directors. I declare under penalty of perjury that the foregoing is true and correct.

[signature]
Linda Collier

Subscribed and sworn to before me
this 24th day of December 2002

KEVIN R. PORTER CHARTERED ACCOUNTANT
Notary Public
[signature]



1474059v2

# EXHIBIT B

in·te·ger, *n.* whole number.
in·te·gral, *a.* whole; necessary. in·te·gral·ly, *adv.*
in·te·grate, *v.*, -grat·ed, -grat·ing. bring into a whole; make available equally to all. in·te·gra·tion, *n.*
in·teg·ri·ty, *n.* honesty; soundness.
in·tel·lect, *n.* power to learn and to think; intelligence. in·tel·lec·tu·al, *a.*
in·tel·li·gence, *n.* ability to reason; intellectual power; information. in·tel·li·gent, *a.*
in·tel·li·gi·ble, *a.* capable of being understood.
in·tend, *v.* design or mean. in·tend·er, *n.* in·tend·ed, *a.*
in·tense, *a.* very great or strong.
in·ten·sive, *a.* in·ten·si·ty, *n. pl.*, -ties.
in·ten·si·fy, *v.*, -fied, -fy·ing. render intense.
in·tent, *a.* fixed with attention; earnest; fixed with some purpose in view. *n.* intention or design.
in·ten·tion, *n.* purpose or design; end intended. in·ten·tion·al, *a.*
in·ter, *v.*, in·terred, in·ter·ring. bury. in·ter·ment, *n.*
in·ter·act, *v.* act on each other. in·ter·ac·tion, *n.*
in·ter·breed, *v.*, -bred, -breed·ing. crossbreed.
in·ter·cede, *v.*, -ced·ed, -ced·ing. mediate; plead on behalf of. in·ter·ces·sion, *n.*
in·ter·cept, *v.* take or stop while on the way. in·ter·cep·tion, *n.* in·ter·cep·tive, *a.*
in·ter·change, *v.*, -changed, -chang·ing. change reciprocally. *n.* exchange; alternate succession; intersection of highways.
in·ter·course, *n.* reciprocal dealings between persons or nations; sexual union.
in·ter·est, *n.* attentiveness or curiosity; benefit; self-interest; share; money paid for the use of money borrowed. *v.* concern. in·ter·est·ed, *a.* in·ter·est·ing, *a.*
in·ter·fere, *v.*, -fered, -fer·ing. intervene; meddle. in·ter·fer·ence, *n.*
in·ter·im, *n.* intervening time; *a.* temporary.
in·te·ri·or, *a.* inner; situated inland; internal. *n.* inside; inside of a building or room.
in·ter·jec·tion, *n.* expression of emotion or passion.
in·ter·lock, *v.* lock one in another firmly.
in·ter·lop·er, *n.* trespasser.
in·ter·lude, *n.* intervening episode or period.
in·ter·mar·ry, *v.*, -mar·ried, -mar·ry·ing. marry, as two families, castes, etc., or within the limits of the family. in·ter·mar·riage, *n.*
in·ter·me·di·ate, *a.* between two points. *v.*, -at·ed, -at·ing. intervene.
in·ter·mi·na·ble, *a.* unending.
in·ter·mis·sion, *n.* space of time between periods of action.
in·ter·mit, *v.*, -mit·ted, -mit·ting. cease for a time. in·ter·mit·tent, *a.*
in·tern, *n.* medical graduate in a hospital for training. *v.* confine within an area. in·tern·ship, *n.*
in·ter·nal, *a.* of the inside; interior; inner. in·ter·nal·ly, *adv.*
in·ter·na·tion·al, *a.* between or among nations; affecting different nations. in·ter·na·tion·al·ize, *v.*, -ized, -iz·ing.
in·ter·plan·e·tar·y, *a.* existing between the planets.
in·ter·play, *n.* interaction.
in·ter·po·late, *v.*, -lat·ed, -lat·ing. insert, as new or spurious matter. in·ter·po·la·tion, *n.*
in·ter·pose, *v.*, -posed, -pos·ing. put between; come between. in·ter·po·si·tion, *n.*
in·ter·pret, *v.* explain; translate; construe. in·ter·pre·ta·tion, *n.*
in·ter·ro·gate, *v.*, -gat·ed, -gat·ing. examine by asking questions. in·ter·ro·ga·tion, *n.*
in·ter·rupt, *v.* make a break in; hinder. in·ter·rup·tion, *n.* in·ter·rup·tive, *a.*
in·ter·sect, *v.* cut into; divide by crossing; cross each other. in·ter·sec·tion, *n.*
in·ter·sperse, *v.*, -spersed, -spers·ing. scatter; diversify. in·ter·sper·sion, *n.*
in·ter·state, *a.* between states.
in·ter·twine, *v.*, -twined, -twin·ing. twine, as one with another.
in·ter·val, *n.* intervening period of time; gap.
in·ter·vene, *v.*, -vened, -ven·ing. come between; intercede. in·ter·ven·tion, *n.*

THIS IS EXHIBIT "B" TO THE AFFIDAVIT OF AVNISH AGGARWAL, SWORN BEFORE ME THIS 8TH DAY OF JUNE, 2004 AT TORONTO, CANADA

[signature]

J. EVERSLEY
BARRISTER, SOLICITOR, NOTARY, COMMISSIONER
(MY COMMISSION DOES NOT EXPIRE)

*Ant.* steady, unceasing, continuous.

**internal** *adj.* 1 interior, located inside, inner, inmost. 2 domestic; governmental, administrative, state, executive, sovereign, political.
*Ant.* 1 outer, exterior, external, outside. 2 foreign.

**international** *adj.* between nations, involving two or more nations, cosmopolitan; worldwide, universal.
*Ant.* national, domestic.

**interpolate** *v.* insert, inject, put in, work in, stick in, throw in, add, introduce, interlard, intercalate, interline, interject, insinuate, intervene, intersperse, sandwich, implant, intrude, wedge in, *Slang* drag in by the heels.

**interpret** *v.* 1 explain, make clear, clarify, explicate, explain the meaning of, assign a meaning to, decipher, define, elucidate, throw light upon, expound; unravel, puzzle out, figure out, piece together. 2 understand, construe, take, accept, make out, decipher, see, read, account for. 3 translate, rephrase in one's native language; restate, paraphrase, reword, render.
*Syn. Study* 1 See EXPLAIN.
*Ant.* 2 mistake, confuse, confound, misconceive, misunderstand.

**interrogate** *v.* question, probe, examine, cross-examine; investigate, test, catechize, ask, query; *Informal* grill, give the third degree.
*Ant.* answer, retort, respond.

**interrupt** *v.* 1 stop, break off, halt temporarily, cause to stop, break in on, discontinue, cut in on, disturb, interfere with, obstruct the course of. 2 block partially, interfere with, break the continuity of, disconnect, intersect, sever, disjoin, punctuate.
*Ant.* 1 continue, resume.

**interruption** *n.* halt, pause, stop, discontinuity, obstruction, hindrance, disconnection, interference; break, gap, hiatus, lacuna, intermission, rift, interlude.
*Ant.* continuance, resumption.

**intersect** *v.* 1 cut across, cross, traverse, crosscut, pass through, pass across, bisect, divide, transect. 2 cross, interconnect, crisscross, meet and cross, have a common point; meet, come together, overlap.

**intersection** *n.* junction, meeting point, crossroads, crossing, interchange, corner.

**intersperse** *v.* interpose, interpolate, intercalate, interlard, interfuse, interject, wedge in; strew, scatter, sprinkle, pepper, bestrew, broadcast, dot, disperse.

**interval** *n.* 1 intervening period, interim, pause, rest, recess, break, interlude, intermission; season, spell, hiatus, interruption. 2 space, opening, gap, interspace, separation, rift, cleft; gulf, breach.

**intervene** *v.* 1 occur between times, pass, take place, come to pass, befall. 2 step in, break in, interpose, intrude, interfere, mediate, arbitrate, intercede, come between, interrupt, *Slang* butt in.

**intervention** *n.* stepping in, breaking in, mediation, intermediation, interposition, arbitration, intercession; interference, intrusion, *Slang* butting in.

**interview** *n.* 1 conversation, talk, chat; round table, conference, question-and-answer session, questioning. 2 professional examination, evaluation, in-person appraisal, consultation; conference, meeting, parley; audience.

**intestines** *n.* alimentary canal; insides, entrails, viscera, bowels, *Informal* guts.

**intimacy** *n.* closeness, familiarity, caring, tenderness, fondness, dearness, affection, warmth, endearment; lovemaking, sexual relations, sexual intercourse; friendliness, amity, chumminess, brotherhood, camaraderie, fraternity.
*Ant.* separation, aloofness, alienation, estrangement, indifference.

**intimate**[1] *adj.* 1 close, bosom, cherished, dear, familiar, confidential, personal, near and dear. 2 deeply personal, innermost, confidential, private, guarded. 3 detailed, deep, thorough, special, profound, personal, direct, experienced, first-hand, close. —*n.* 4 close friend, close associate, confidant, familiar; *Informal* chum, crony, pal, buddy.
*Syn. Study* 1 See FAMILIAR.
*Ant.* 1 distant, formal, remote. 2 open, public, known. 3 superficial, limited, slight. 4 stranger, outsider; enemy, foe.

**intimate**[2] *v.* hint, suggest, imply, indicate, insinuate, allude, refer to indirectly, rumor.
*Syn. Study* See SUGGEST.
*Ant.* state, declare, assert, proclaim.

**intimation** *n.* hint, suggestion, inkling, clue, innuendo, indication, veiled comment, rumor, allusion, insinuation, sign, portent.

**intimidate** *v.* terrorize, terrify, scare, cow, menace, make afraid, make timid, make fearful, frighten, fill with fear, alarm, subdue, bully, daunt, browbeat, buffalo; compel by threats, coerce; discourage, dismay.
*Syn. Study* See DISCOURAGE.
*Ant.* encourage, inspire, embolden; reassure.

**intolerable** *adj.* unendurable, unbearable, insupportable, insufferable; excruciating, racking, torturous, agonizing; abominable, hateful, loathsome, abhorrent; unreasonable, excessive, outrageous.
*Ant.* tolerable, bearable, endurable, comfortable; reasonable.

**intolerance** *n.* 1 bigotry, bias, prejudice, narrow-mindedness, lack of forbearance; xenophobia, chauvinism, racism. 2 low tolerance, inability to bear, hypersensitivity; weak spot; *Informal* no stomach.
*Ant.* 1 tolerance, compassion, forbearance, liberality. 2 tolerance, endurance.

**intolerant** *adj.* not tolerant, bigoted, prejudiced, narrow-minded, fanatical, closed-minded, parochial, sectarian, hostile, resentful, jealous, mistrustful; xenophobic, chauvinistic.
*Ant.* tolerant, liberal, forbearing, large-minded.

**intone** *v.* chant, drawl, singsong, hum, croon, vocalize, intonate; say, speak, utter, voice, mouth, murmur, pronounce, enunciate, articulate.

# EXHIBIT C

## TRI-AD'S PAYMENT SCHEDULE

| Payment No. | Due Date | Wired On | Amount | Remarks |
|---|---|---|---|---|
| 1 | Jan03/2003 | Jan02/2003 | 30,000.00 | 10 days of execution |
| 2 | Feb02/2003 | Jan30/2003 | 20,833.33 | 40 days of execution |
| 3 | Mar05/2003 | Feb27/2003 | 20,833.33 | 30 days interval |
| 4 | Apr05/2003 | Mar27/2003 | 20,833.33 | 30 days interval |
| 5 | May06/2003 | Apr29/2003 | 20,833.33 | 30 days interval |
| 6 | Jun06//2003 | May29/2003 | 20,833.33 | 30 days interval |
| 7 | Jul07/2003 | Jun27/2003 | 20,833.33 | 30 days interval |
| 8 | Aug07/2003 | Jul30/2003 | 20,833.33 | 30 days interval |
| 9 | Sep07/2003 | Aug28/2003 | 20,833.33 | 30 days interval |
| 10 | Oct08/2003 | Sep29/2003 | 20,833.34 | 30 days interval |
| 11 | Nov08/2003 | Oct30/2003 | 20,833.34 | 30 days interval |
| 12 | Dec09/2003 | Nov28/2003 | 20,833.34 | 30 days interval |
| 13 | Jan09/2004 | Dec30/2003 | 20,833.34 | 30 days interval |
| | | TOTAL | 280,000.00 | |

THIS IS EXHIBIT "C" TO THE AFFIDAVIT OF AVNISH AGGARWAL, SWORN BEFORE ME THIS 8TH DAY OF JUNE, 2004 AT TORONTO,

J. EVERSLEY
BARRISTER, SOLICITOR, NOTARY, COMMISSIONER (MY COMMISSION DOES NOT EXPIRE)